Simonsen versus Bremby May it please the court, Hugh Barber, Assistant Attorney General representing the defendant appellant, the Commissioner of State Medicaid Agency. We appeal from the entry of a preliminary injunction in joining the agency from denying Medicaid eligibility related to the decantment of two trusts more than a million dollars in total, which decantment was made while the beneficiary was in a under federal law that the department could penalize a transfer only if the predecessor trust was an available asset under the meaning of Medicaid and a resource as defined by SSI. The regulatory definition of SSI speaks to property that a person owns and could convert to cash. It also speaks property that the individual has the right authority or power to liquidate and to use for their needs. Isn't that the problem? I mean how could she have liquidated the trust? Your Honor, there's a wide body of case law, I'd say many many cases in my brief, that if the individual is entitled to a distribution based on the terms of the trust for their support that is sufficient. That's the Vermont law that you've given us. I cite about 30 cases in my brief to that effect. But do any of them do any of them apply the Social Security standard there about liquidation? There's around 30 or 40 cases that in essence supply the Social Security definition without citing to it. Well there are three cases that specifically cite the SSI standard. The Rome case, the Brown case, and the Seidenberg case. When you say the SSI standard do you mean the POMS manual provision? No, the regulation. It seems that the POMS manual provisions, at least a couple of them here, contradict your view. Would you agree with that? I agree that the POMS manual provision treatment of spent-thrift trusts indicates that they're not available, not enforceable. Well the available resources provisions too, right? I mean it's not just the spent-thrift trust provision in the POMS manual, but other provisions in the POMS manual you think would dictate a different result as well, right? The provision, yes. As to available resources, you know what I'm talking about. Right. The provision in the POMS manual, there's three alternative tests on when you have a right. If you have the ability to direct the trustee to provide for your support, again because you have, under the terms of the trust, you're entitled to be supported, that's sufficient. My question is this, is that the Lopes case tells us, tells you, that we're supposed to give substantial deference to those POMS manual provisions, but you seem to contradict that view here. Is that a fair description of your position in this case? In this case, Your Honor, we believe that that particular POMS provision regarding this treatment of spent-thrift trusts is not entitled to any deference. Now the case law indicates you look at the provision, provision by provision, to determine whether it's, under Skidmore, whether it's thorough and persuasive. What about the available resources provision in POMS? We don't, the test about the ability to direct distributions for your support, we don't contest, and indeed that's consistent with the large body of cases cited in our brief that don't specify. It's not her ability, it's the trustee's ability. No, it's her ability to compel whether you have to undertake litigation to accomplish the access to a resource. Indeed, the POMS specifically say the property is not a resource under such circumstances. That issue, respectfully, was not presented under the facts of this case. But it's part of the law that we're applying, that this trust, if you read the trust, it's the trustee who is obligated under the terms of the POMS. The POMS language is that the beneficiary has to have the ability to direct the asset. In the case law, respectfully, Your Honor, in both cases that cite the POMS and cases that don't, focus on the beneficiary's ability to direct or compel distributions because she's legally entitled to. How do you deal with the fact that POMS says that if what you'd have to do is take the trustee to court, that's not enough? Two-fold, Your Honor. One, it's certainly not presented under the facts of this case. There's no claim in this complaint that litigation would have been required. Not in the complaint, not in any affidavits. Second... I'm asking you practically, if this trustee did not follow the terms of the trust and direct the income to her benefit, what would she have to do? To get that? She, in that case, would have to compel distributions through legal coercion. And that is... A lawsuit, usually. A lawsuit. And that, respectfully, is a provision in the POMS that is also not entitled, in addition to not being present. The premise of your entire argument, as I understood it, is that the POMS, in the context of this case, is not entitled to any deference because it's contrary to the statute. Contrary to the regulation? The regulation. In two respects. The regulation talks about legal right authority. Is that right? Is that the thrust of your entire argument? That is the main point of the argument, yes, Your Honor. So why after Lopes do we agree with you? Well, the Second Circuit authority that has refused to give authority to POMS manual provisions because it's not persuasive. Referring back to the Spendthrift Clause issue, the case law is absolutely clear that a Spendthrift Clause has absolutely no impact at all on the ability of the trust beneficiary to compel distributions. That is the rule of the Restatement 60, the Restatement 3060. There's case law to that effect. There's a Florida statute on point to that effect. There's absolutely no contrary authority. And when you think about it, the purpose of the Spendthrift Clause is to protect the beneficiary, the beneficiary's ability to obtain distributions. So for Social Security to suggest that a Spendthrift Clause interferes with the ability of a beneficiary to obtain distributions that they're entitled to receive under the terms of the trust, respectfully, it's absurd. And it shows that no deference at all should be afforded on that issue. The specific POMS guidance here is contrary to the CFR provision on which you apply? The CFR provision speaks to legal right, authority, or power. Query, and it elopes... If the individual has the right, authority, or power to liquidate property. And it's clear from POMS that they could mean acting through third parties. I mean, resources are frequently held by third parties. And if... So the third party here would be the trustee? In this case, and POMS speaks to, includes... That would, that would apply where they've specifically addressed that question of trustee. I'm not sure you can argue that. Well, the POMS provision on the definition of... The regulation, as you started out, speaks about the ability to liquidate. There's no doubt that she could never have directed the trustee, I want to liquidate the trust and take all the money now. She could direct the trustee to pay for what support that's necessary. But that's not liquidation. That's far less than liquidation. That is paying for necessary support. How is it liquidation, which is the language of the regulation? It is payment for her ongoing nursing home care. You think that's liquidation of the trust? Of the entire trust? No, but as you... Isn't that what the regulation talks about, is the power to liquidate the asset and convert it to cash? Well, certainly if it all could not be liquidated at once, certainly enough could be liquidated on an ongoing monthly basis. The other thing is that you have to have the ability to direct that it be paid to some other party. And there would have been no ability on her part to say to the trustee to pay it to a third party unrelated to her health and maintenance. But the terms of the trust speak in terms of providing it either to her or to someone else on her behalf. And the case law all say that that's sufficient. Right, but she couldn't have asked to have it paid to someone who wasn't providing health or benefits to her. She couldn't have said, I want this paid to... ...a dressmaker or whatever. Are you saying she could have started to direct that? No, then that's not what this case is all about. She had the authority to direct it. Doesn't the control of the asset require you to be able to direct it to anybody? No, it requires that you be able to direct it for your support, in this case for her health, which is the term that was specifically mentioned in the trust terms. If it's for any reason, for any purpose, it's not for support. I see. And we wouldn't be here. We wouldn't have... That's part of the statutory, the regulatory language. That's correct. It has to be available for support, for maintenance. Frankly, the use of the word power and the legal right authority of power specifically suggests that if necessary, and if the case were raised, if litigation is required, so be it, but that doesn't negate respectfully the suggestion that the need for litigation prevents it from being an available asset. Anything in the regulation that further describes the right authority or power as a right authority or power in the context of suing or filing a lawsuit? The definition in the POMS... No, no, no, because you're relying not on the POMS, but on the regulation. I'm showing inconsistency in the POMS, respectfully, Your Honor. Even in the trust POMS, the definition of the term trust beneficiary, Joint Appendix 9798, speaks in terms of the person being an equitable owner has certain rights that would be enforced by a court. So even in the... Where are you reading from? From Joint Appendix 98, which is part of the very same POMS section that the plaintiff relies on. Where on page 98? Excuse me, Your Honor? Where on page 98? It's at the very bottom. It starts at the bottom of 97 and goes on to the top of 98. This is the POMS, right? Yes. Yes, it's the same POMS section that includes the language that a spendthrift clause prevents a trust from being a resource or an available asset. So even the POMS recognizes that the reason why it's a resource is that the individual has a legal interest that is an entitlement that they can enforce. Well, that's not the only defining trust beneficiary. Where does it say that that trust beneficiary status then is deemed to give the person a resource in the trust corpus? Because I read you the other POMS section that suggests that if what you have to do is litigate to get the trustee to vindicate your rights, it's not a resource. If you refer to JA 102, Your Honor, this is a three-part test and one under the POMS interpretation of the reg under D1A, about two-thirds of the way down. The second test is if the individual can direct the use of trust principle for his or her support and maintenance under the terms of the trust, the trust principle is a resource for SSI purposes. Isn't it the trustee who directs the trust principle to the beneficiary's use or support? It's not the beneficiary. No, it's the individual, which is the assistant individual, the individual plaintiff. In this trust, where does it give her the ability to direct the use of the trust principle? There's a trust standard, which is stated in paragraphs sections 14 and 16 of the trust. The trust standard is the trustee shall pay to my daughter, and I'm skipping a few words, so much of the income and principle of the trust as the trustee deems necessary or advisable from time to time for her health, maintenance, and reasonable comfort, education, and best interest. The trustee directs. Where does it say that she can direct? The case law, Your Honor, in Restatement 186. What does it say in the trust? The trust, this imposes a duty on the trustee. Correct. Case law indicates in Restatement 187 in the Florida case, in Ray True's trust, this case is governed by Florida law, says when the trustee is subject to an obligation to distribute for her support, in this case for her health, that courts will enforce that obligation because that is an obligation that the trustee must comply, at least to the extent reasonably necessary. Respectfully, this is settled law. What do we do with POMS 1120.010C2, which says that an individual is not required to undertake litigation to accomplish access to a resource. The property is not a resource under such circumstances. How does that play in all of this? Well, I'm repeating myself, but that section is not implicated in this case at this stage. There is no claim that litigation would have been required. But that helps to define the resource is that the trustee has to direct. If the trustee doesn't act, you're saying she has the ability to force him to, but how she does it is a lawsuit. Okay. Why don't we hear from your adversary and then we'll give you a chance to rebut. Good morning, Your Honors. May it please the Court. I'm Rene Reshack. I represent Ms. Simonson. I think the key to this case is, I think the discussion has indicated, is Judge Lawyer's decision in Lopes, which said that the POMS rules are going to be applied unless they are foreclosed by the plain language of the regulation. And I don't think that these POMS provisions are, in fact, foreclosed. And that, in turn, was based on this Court's prior Folk's decision, where the POMS was only not followed because it was directly contradictory to a regulation. That's simply not this case. There's been much discussion by the Department of Social Services about how this is a support trust and cases from Hillary and Jan around the country. Again, respectfully, we don't think that is the issue. Can you explain to us what objective of the Social Security Act is being achieved by not treating these trusts, which have no purpose other than the support and maintenance of the beneficiary, not treating them as the beneficiary's resource? Because it otherwise seems to me that what you're asking us to do is create a blueprint whereby very wealthy people could create trusts for beneficiaries that they could use for whatever purpose but still get Medicaid. Well, Your Honor, respectfully, this— What's the purpose of construing the POMS as you're urging? Well, because— To have this trust not viewed as her resource. These trusts also referred to the best interests of the beneficiary. Why would the law not want to treat this as a resource? Because what you have is a situation where there's a balancing, frankly, of interest. You've got, obviously, a large trust, but the direction of the trustee to look to her best interest. Well, here's a woman who is in her mid-50s, has presumably a long life expectancy. The trust was created 20 years before. Obviously, her mother knew she was troubled, wanted this to be available for her during her lifetime. She ends up in a situation where she is in an extraordinarily expensive care facility, $65,000 a month. In the course of time, in just the time that this litigation has been pending, if the state were able to prevail, the entire trust would be depleted. And this woman, at that point, would be totally destitute. And so we think that that is not an appropriate public policy and that there's been a balancing here that had to be done and that the Social Security Administration— Destitute in the sense that Title 19 would then kick in, right? Well, Title 19, that's correct, Judge. But the question is, if she were able to get, hopefully, out of this facility— and as I said, she's had a long, troubled history, in and out of various care needs— she wouldn't be able to. She'd be stuck in an institution on Medicaid forever. It doesn't make sense that your argument is if she had the exact same amount of money that she's got as that trust corpus, she would have to pay for her care at this facility. And, as you say, eventually run out of it. Why is the fact that the family put it in a trust sufficient to say, you know what, now her $65,000 of care becomes the taxpayer's obligation rather than the trust's obligation? Well, part of it is, respectfully, Your Honor, that this is not her money. And, for better or worse, the law is that, other than spouses, where there is an obligation of support and, in most states, an elective share claim if someone passes away, parents have no obligation whatsoever to provide for their adult children. And if they do so provide, they get to write the terms of that. The analogy I would provide to Your Honors is that there is a section in the Social Security Act about what are called supplemental needs trusts under 42 U.S.C. section 1396 P.D. 4. And these are trusts which are created by the individual. And the money is put into the trust. And then, on the individual's death, there has to be a repayment to Medicaid. And that was a balancing that was created. There is no such rule for supplemental needs trusts created by parents. Parents will, as part of their estate plan, under their wills, or under freestanding trusts, as in this case, use language that limits the ability of the Medicaid program or the SSI program to count that money. And, indeed, the trust under which— the trust into which these funds were decanted has that kind of language. And the Department of Social Services, in its brief, has agreed that, yes, as a third-party supplemental needs trust, that money is protected. So, you know, 20 years ago, 25 years, almost 25 years ago, when these trusts were created, there was not, frankly, that understanding, or there wasn't the understanding on the part of the attorney who did this down in Florida. But there certainly are these countervailing public policy arguments. But, really, Congress has recognized that an appropriately drafted— Not Congress. Not Congress. HHS. Because this is a much more specific carve-out to protect the ability of parents in your situation. Well, but I guess my point, Your Honor, was that the— and it said you have to pay the money back at the— whatever is left in the trust has to be used to repay Medicaid when the individual dies. And they made no such requirement on trust created by third parties, parents, brothers, sisters, whomever. So I think that was the public policy judgment that was made. Didn't HHS make a further public policy judgment about how to categorize those trusts? There was a public policy judgment that, in the Omnibus Budget Reconciliation Act of 1993, that said if you have a self-settled trust and there's any discretion for the trustee to distribute money for your benefit, whether or not the trustee exercises that discretion, Medicaid or SSI can count that trust as an available resource anyway. But that explicitly only applied to a self-settled trust because it was your own money. And using your own money in a way that allowed you to have the benefit of the money for your use, yet, you know, to be able to shelter it from public benefits was thought not to be inappropriate public policy. But that has no application to this context where it's somebody else's money. So that's the distinction, Your Honor. And I think Congress really drew that when it enacted these provisions in OBRA of 1993. And then they enacted, as part of that, this exception that said, well, even though the general rule is a self-settled trust we're going to count, there's an exception if it's one of these supplemental needs trusts with a payback provision. And so I think that's the public policy cut that has been made here. So I would also just point out that, briefly, that we don't really think this is a support trust without getting into all of this, frankly, difficult and I find confusing and contradictory law about that. This trust language also says, the trustee is supposed to look to the best interests of the beneficiary. And we think that under this Court's Ewing v. Rummel case, that takes it out of the context of being a support trust. And certainly, I think, in these facts with this mid-50s woman with a $65,000 a month bill that would deplete the trust in a year and a half, it was in her best interest not to do that. And so we don't even think it is a support trust. Am I right that this lawsuit is brought by her attorney, in fact, Bruce Simonson, and that he is the beneficiary of any monies that are remaining in the trust at her death? Yes, Your Honor. Do we have a conflict here? I don't think he does, Your Honor. I mean, because I think that this is in her best interest. Because otherwise, again, I come back to the point of, well, what's her best interest? And having this money potentially available if she's got a 25, 30-year life expectancy. And yes, right now, she's in a Medicaid facility. What is the trust paying for at this point? Pardon? What is the trust paying for at this point? I'm not aware, Your Honor, of what exactly it's paying for. And the record doesn't— Whether this is being engineered to provide her with anything, or whether it's now that she's basically in need of full-time care, which is being provided by Medicaid, Bruce Simonson is looking to make sure that what's in the trust comes to him when she dies. I don't know what it's being used for, Your Honor. Under Medicaid, her income, all but a few dollars, would go to her care needs. So, you know, if there are other things that could be provided for her, the trustee could do that. But the record is silent, and I frankly don't know how it's being used currently for her benefit. Thank you. Mr. Barber. Yes, Your Honor. I could quickly answer your last question. Medicaid is paying a comprehensive rate for her total care. So the real party in interest, in many respects, is Bruce Simonson. Secondly, Medicaid is, by statute, is a payer of last resort. It is not allowed to pay if there are other sources of payment available. But counsel just explained that this is the reality of these trusts set up by third parties, that they get to shelter the money in ways that you couldn't do if you were the person setting up a trust for yourself. Why don't you explain to us why you don't want us to view it that way? In this case, Your Honor, there was a trust that was available to her. She had the legal right, authority, and power to compel distributions for her support. And that trust— Predecessor trust. Hmm? Predecessor trust. The predecessor trust. And the decantment of the predecessor trust was a transfer of asset. So we're not dealing here with someone just not making a transfer in the look-back period. This is a transfer of asset case, not an excess asset case. Yes, if they had simply set up a supplemental trust without constituting, without doing a transfer of asset in the look-back period, they probably could obtain eligibility. But that's not the facts here. Has the Social Security Administration taken any position on these circumstances? Has it weighed in in the course of the litigation at any point? No, Your Honor. I mean, frankly, Social Security is an $800 or $900 a month benefit. It's a poverty benefit. It's a what? It's $800 or so monthly benefit. Are they coming through Medicaid? Excuse me? Doesn't the Medicaid come through them as well? By statute, Medicaid is supposed to follow the definition of resources that is contained. I mean, what agency is—at which agency does the $65,000 a month come? Connecticut's paying half of it, but who— Oh, it's from my client. That's from my client, the state Medicaid agency. SSI is administered by the Social Security. And have they weighed in on whether they think they have to pay this when she's got this trust? To my knowledge, no, Your Honor. I cite probably 40 cases in my brief, Your Honor, where trusts that are not as strong as this, most of them, were all determined to be available assets because the individual had the legal right, authority, or power to compel distributions. I cite three cases that cite the SSI criteria and all say that the legal ability to direct or compel distributions is enough to make it a resource for SSI purposes or an available asset for Medicaid purposes. There is overwhelming authority on our side, Your Honor. The Palm's Manual statement on the effect of a spendthrift trust, respectfully, is foolish. It's what? It's—well, foolish in the sense that it's contrary to settled law. The Restatement of Trust 60, Florida Statute, Case Law, Purpose of a Spendthrift Clause all indicate that a spendthrift clause has no impact at all on the ability of the trust— You would agree that if we determined that the Palm's guidance on that issue was not inconsistent with the regulation, then under Lopes, we would defer to the Palm's guidance on that issue. Would you agree with that? Well, that's how Lopes formulated the standard. Respectfully, Skidmore, which is perhaps even a Supreme Court case, even more controlling, talks about the ability to persuade based on its thoroughness and thoughtfulness, and where settled law is directly to the contrary, I don't see how this Court could possibly give deference to the Palm's statement on the effect of a spendthrift clause. Thank you very much, gentlemen. We're going to take a matter of your advisement. The remaining two cases are on our calendar on this issue, so we'll stand adjourned.